EXHIBIT 3

Gina Anne Johnnie, OSB No. 872630
gina@shermlaw.com
Tobias N. Tingleaf, OSB No. 075517
toby@shermlaw.com
SHERMAN SHERMAN JOHNNIE & HOYT LLP
693 Chemeketa Street NE
Salem, Oregon 97301
Telephone: 503-364-2281
Facsimile: 503-370-4308

*Attorneys for Plaintiff*
*Pure Valley Solutions, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| PURE VALLEY SOLUTIONS, LLC, an Oregon Limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THIRD WAVE FARMS, LLC, a Kentucky limited liability company, MIKE LEWIS, TRENT PAASCH AND DAVID EBEN,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT**<br>(Breach of Contract)<br><br>Demand for Jury Trial |

For Plaintiff Pure Valley Solutions, LLC's ("Pure Valley") Complaint against Defendants Third Wave Farms, LLC, a Kentucky limited liability company ("Third Wave"), Mike Lewis ("Lewis"), Trent Paasch ("Paasch") and David Eben ("Eben"), jointly and severally, Pure Valley states and alleges the following:

## I. PARTIES

1. At all material times herein, Pure Valley is now and has been a limited liability company duly organized and existing under the laws of the state of Oregon.

2. At all material times herein, Third Wave was and is now a Kentucky limited liability company, unregistered to do business in Oregon but doing business in Oregon.

3. At all material times herein, Mr. Lewis, Mr. Paasch and Mr. Eben are individuals residing in Kentucky, Oregon and Connecticut, respectively. Mr. Lewis, Mr. Paasch and Mr. Eben were and are now, the members of Third Wave with actual control over Third Wave.

## II. JUISDICTION AND VENUE

4. The citizenship of the parties is diverse. Pure Valley is an Oregon limited liability company; Third Wave is a Kentucky limited liability company; Mr. Lewis represents himself has being a resident of Kentucky; Mr. Paasch represents himself as being a resident of Oregon; and Mr. Eben represents himself as being a resident of the state of Connecticut.

5. The amount in controversy exceeds $75,000.00.

## III. COMMON ALLEGATIONS

6. Based upon information and belief, Third Wave was founded in Kentucky on or about May 23, 2018.

7. Less than a month thereafter, Third Wave was introduced to Pure Valley. Shortly after meeting, a joint venture proposal was made for the purpose of collaborating over a project. That project did not go forward, but another project ultimately resulted in a written agreement. Pursuant to that written agreement, and with Third Wave's fully knowledge, Pure Valley incurred capital costs to acquire equipment for the purpose of processing industrial hemp; additionally, Pure Valley engaged local farmers to grow industrial helm. The processed

industrial hemp was to be purchased by Third Wave for an agreed upon minimum price with an agreed upon minimum volume. Originally, the agreed upon price was $2,500.00 per liter of CBD oil. However, before the agreement was executed, Third Wave negotiated a change in the minimum price to $1,800.00 per liter.

8. An agreement ("Agreement") was signed by Third Wave on June 14, 2019, but is effective as of May 20, 2019. A copy of the fully executed Agreement is attached hereto as Exhibit 1 and incorporated herein by this reference.

9. The Agreement was negotiated by Mr. Lewis, Mr. Paasch and/or Mr. Eben.

10. Third Wave was inadequately capitalized at inception. Essentially, it did not have enough capital to ensure that it could pay the risks associated with the business it entered into.

11. Third Wave, Mr. Lewis, Mr. Paasch and Mr. Eben knew or should have known that Pure Valley was incurring significant capital expense in reliance on the Agreement.

12. Under the Agreement, Pure Valley entered into agreements with local farmers to grow and harvest industrial hemp, and then Pure Valley processed the industrial hemp (the "Product").

13. Under the Agreement Third Wave was to market and sell the Product; although whether Third Wave actually sold the Product was not a condition to its payment obligations to Pure Valley. Third Wave, Mr. Lewis, Mr. Paasch and Mr. Eben either directly or implicitly represented that Third Wave had direct connections with various reputable retail outlets so that selling a minimum of 5,000 liters involved no risk. In fact, under the Agreement, the risk of selling the Product was entirely on Third Wave.

14. Pure Valley would not have entered into the Agreement, nor made the capital investment, had it known that Third Wave could not or would not perform under the terms of the Agreement.

15. In negotiations, and as part of the Agreement, Third Wave represented that it had raised all necessary capital to perform under the Agreement except the remaining $2,000,000.00. Based upon the contractual representations by Third Wave, Pure Valley reasonably believed that Third Wave was adequately capitalized.

16. Pursuant to the Agreement, Third Wave was to prepay Pure Valley a $75,000.00 nonrefundable prepayment on or before June 30, 2019, $75,000.00 nonrefundable prepayment on or before July 15, 2019, and $100,000.00 nonrefundable prepayment on or before July 30, 2019. When those payments were not made as required, Pure Valley put pressure on Third Wave, Mr. Lewis, Mr. Paasch and/or Mr. Eben for payment. In response, on August 29, 2019, they paid $25,000.00 as a deposit; and, after many follow up questions by Pure Valley, represented that on September 24, 2019, it sent another $50,000.00. The second payment was never received by Pure Valley. Despite the representation to the contrary, it is unlikely that the second payment was sent.

17. Thereafter, on September 26, 2019, Third Wave and Mr. Eben represented that Third Wave had an agreement with a very large well-known retailer and hinted that the companies are merging. At that time, Third Wave raised no concerns about the Agreement pricing and indicated that they would be selling the Product and paying Pure Valley.

18. Based upon those representations, and assurances, Pure Valley did not call the Agreement in default at that time.

19. On October 15, 2019, Pure Valley sent test results that triggered Third Wave's obligation to make payment under the Agreement. In response, Third Wave offered to pay a much lower price per liter than required by the Agreement. Pure Valley did not agree to the lower price.

20. On October 16, 2019, Pure Valley called Mr. Even to discuss the issues. It then resent the test results on October 23, 2019. In response, Mr. Paasch disputed the terms of Agreement by essentially interpreting them in a way that is inconsistent with the plain terms of the Agreement.

21. On November 9, 2019, and after, Mr. Eben presented new offers for the purchase of the Product, which, again, are inconsistent with the existing Agreement. At that time, Pure Valley considered each offer, and tried to work with Third Wave, but did not accept a change in terms and Third Wave failed to perform.

22. Despite trying to work with Third Wave, at no time did Pure Valley release Third Wave from any of its original obligations under the terms of the Agreement.

23. On February 21, 2020, Pure Valley send a letter to Third Wave, Mr. Lewis, Mr. Paasch and/or Mr. Eben, demanding that they cure the default. Because they did not cure the default, Pure Valley filed this action.

///

///

///

///

///

///

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Breach of Contract)

For its First Claim for Relief against Third Wave, Pure Valley alleges:

24. Pure Valley realleges and incorporates herein by this reference the Common Allegations.

25. Pursuant to the Agreement, Pure Valley invoiced Third Wave for the Product following testing. Invoices were to be paid in full prior to any shipment. Because the invoices have not been paid, Pure Valley has not shipped the Product.

26. Upon payment, Pure Valley is ready, willing and able to ship all of the Product required under the terms of the Agreement.

27. Pursuant to the Agreement, when payment remained unpaid, then the Product is stored by Pure Valley. Pursuant to the Agreement, Third Wave had no obligation to pay for storage for the first 21 days; beginning the 22nd day, Third Wave incurred (and continues to incur) storage fees at an amount equal of $9,450.00 per day from November 13, 2019 until the Product is shipped.

28. Pure Valley has performed each and every obligation required of it under the Agreement and is prepared to ship 5,000 liters of Product to Third Wave.

29. Pursuant to the Agreement, Pure Valley has been damaged in the amount of the following:

   a. $9,000,000.00 minus the $25,000.00 deposit, totaling 8,975,000.00, together with interest thereon at the rate of 9% per annum from February 21, 2020 until paid; and

## IV.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Breach of Contract)

For its First Claim for Relief against Third Wave, Pure Valley alleges:

24.   Pure Valley realleges and incorporates herein by this reference the Common Allegations.

25.   Pursuant to the Agreement, Pure Valley invoiced Third Wave for the Product following testing. Invoices were to be paid in full prior to any shipment. Because the invoices have not been paid, Pure Valley has not shipped the Product.

26.   Upon payment, Pure Valley is ready, willing and able to ship all of the Product required under the terms of the Agreement.

27.   Pursuant to the Agreement, when payment remained unpaid, then the Product is stored by Pure Valley. Pursuant to the Agreement, Third Wave had no obligation to pay for storage for the first 21 days; beginning the 22nd day, Third Wave incurred (and continues to incur) storage fees at an amount equal of $9,450.00 per day from November 13, 2019 until the Product is shipped.

28.   Pure Valley has performed each and every obligation required of it under the Agreement and is prepared to ship 5,000 liters of Product to Third Wave.

29.   Pursuant to the Agreement, Pure Valley has been damaged in the amount of the following:

  a.   $9,000,000.00 minus the $25,000.00 deposit, totaling 8,975,000.00, together with interest thereon at the rate of 9% per annum from February 21, 2020 until paid; and

  b. Storage fees in the amount of $9,450.00 per day from November 13, 2019 until the Product is shipped.

  30. Pursuant to the Agreement, Pure Valley is entitled to recover its reasonable attorney fees, costs and disbursements.

## SECOND CLAIM FOR RELIEF

### (Piercing the Entity Veil)

  For its Second First Claim for Relief against Mr. Lewis, Mr. Paasch and Mr. Eben, jointly and severally, Pure Valley alleges:

  31. Pure Valley realleges and incorporates herein by this reference the Common Allegations, as well as paragraphs 25 through 30 above.

  32. At all material times herein, Mr. Lewis, Mr. Paasch and Mr. Eben controlled Third Wave and they used that control to make improper and material misrepresentations to Pure Valley.

  33. Specifically, before and after the Agreement was signed, Mr. Lewis, Mr. Paasch and Mr. Eben knowingly and intentionally misrepresented that that Third Wave was adequately capitalized such that it could pay damages incurred by Pure Valley if it defaulted on the Agreement.

  34. Before and after the Agreement was signed, Mr. Lewis, Mr. Paasch and Mr. Eben knew or should have known that Pure Valley was incurring significant capital expense in reliance on the Agreement and on the representations made by them; they further knew that if Third Wave defaulted on the Agreement that Third Wave did not have adequate capital to satisfy damages incurred by Pure Valley.

35. Before and after the Agreement was signed, Mr. Lewis, Mr. Paasch and Mr. Eben knowingly and intentionally represented that Third Wave had "partnerships" and agreements in place to market all of the Product, when those representations were not true.

36. Mr. Lewis, Mr. Paasch and Mr. Eben knew or should have known that their representations and their failure to disclose facts were improper and were aimed at shifting all economic risk in the Agreement to Pure Valley.

37. Pure Valley would not have entered into the Agreement, nor would it have made capital improvements and entered into contracts with local farmers, had it known that Third Wave was not adequate capitalized and had no agreements with third parties to sell the Product.

38. Because of the material misrepresentations made by Mr. Lewis, Mr. Paasch and Mr. Eben, Pure Valley is not able to collect all damages incurred because of Third Wave's breach of the Agreement.

39. As a result, Mr. Lewis, Mr. Paasch and Mr. Eben are jointly and severally liable to Pure Valley for all amounts owing to it from Third Wave.

## V.   PRAYER

WHEREFORE, Plaintiff Pure Valley Solutions, LLC demands judgment as follows:

1. For its First Claim for Relief against Third Wave Farms, LLC:

    a. Damages against Third Wave Farms, LLC in the sum of $8,975,000.00, together with interest thereon at the rate of 9% per annum from February 21, 2020 until paid;

    b. Storage fees in the amount of $9,450.00 per day from November 13, 2019 until the Product is shipped; and

    c. Its reasonable attorney fees, costs and disbursements.

2. To the extent the First Claim for Relief is not collectable, for its Second Claim for Relief against Mr. Lewis, Mr. Paasch and Mr. Eben, jointly and severally:

   a. Damages against Third Wave Farms, LLC in the sum of $8,975,000.00, together with interest thereon at the rate of 9% per annum from February 21, 2020, until paid;

   b. Storage fees in the amount of $9,450.00 per day from November 13, 2019 until the Product is shipped; and

   c. Its reasonable attorney fees, costs and disbursements.

3. Any other relief this Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

DATED this ____ day of February, 2020.

SHERMAN, SHERMAN, JOHNNIE & HOYT, LLP

By: _____
Gina Anne Johnnie, OSB No. 87263
gina@shermlaw.com
Tobias N. Tingleaf, OSB No. 075517
toby@shermlaw.ccom
Of Attorneys for Plaintiff
Pure Valley Solutions, LLC